Thomas J. Kovarcik, New York City, for the Appellant, Volkswagen of America, Inc. May it please the Court, it is my honor to appear here again in this Court this afternoon to argue the first of Volkswagen's two appeals in its defective merchandise litigation. The issues before the Court this afternoon are rather limited. The questions really are, does an allowance for defects under Section 158.12 have to be brought by protesting liquidation? And second, if not, are there any restrictions on how that claim must be brought? I have two preliminary questions that would be helpful to me. First of all, what are we talking about here in this case? Are these all defects that were remedied after the liquidation? Yes. Second question, was Volkswagen aware of these deficiencies before it imported the products? These particular deficiencies? Just this case. I mean, there are certain entries that were made, and I assume there are certain automobiles. My question is, when you entered these things, were you aware that they had some deficiencies? We expected them to have some. You expected them to have some? Yes. You did? Yes. So you had some knowledge? Absolutely. Did you know what the defects were? No. Okay. What does that mean? You could say that you expect every car. Well, Volkswagen kept records of the repairs and the repair costs for all the years involved in its litigation for defective merchandise. In fact, for years even prior to that. Now, I should say, this is not part of this case. I kind of feel like I'm arguing the second appeal, but since you're inviting me to do it, I'd be pleased to. But wait. But your answer to Judge Freeman, then, is that you weren't aware of what the specific defects were. No. We were aware that there would be some, and we had an estimate of the amount that it would cost to repair them.  Correct. Well, let me say something again in light of what the process is. Is this in the sense that you expected that for every hundred cars, at least 26 of them would have some defect that would have to be repaired? Is that what you're telling us? Or that you had some awareness that a number of these cars would have brake problems? Based on prior statistics, we were virtually certain that there would be warranty repairs on each of the vehicles that were imported. On each of them? On each of them. And, in fact, as the evidence in the other case on appeal shows, there were such defects. Now, the record shows that at the time of the 90-day limit, you had performed about 50 percent of the repairs. I would say something like that, yes. Now, is that 50 percent figure based on an estimate of what you expected the defects to be? No. Or was that an actual quantification of real defects? No. At the time that the protests—now, I hesitate because I'm afraid I might become confusing at this point. At the time the protests were filed, we're not talking about the claims now, the letter claims filed in this case, but the protests that are subject of the other case. At the time those were filed, some repairs had already been made, correct? But in terms of what we're talking about in this case, no repairs had been made. This case includes all repairs that had not been performed at the time the protests were filed. And you weren't aware of any defects at the time of liquidation other than your statistical knowledge about what percentage of cars that are imported are likely to have a certain amount. There were probably some defects that were picked up early on by the dealer before the car even went to the customer. So it's possible some defects may have been discovered before liquidation. Let me pose this— I'm sorry. Maybe I misunderstood your question. Maybe I'm missing something here, but after liquid—by the time you filed your protests, were you aware of any defects? Yes, absolutely. You were. Yes. But you were aware of the particular defects or you were anticipating defects because— Yes, repairs— Let me finish my question. I'm sorry. Were you aware of particular defects in this automobile and that automobile because you had discerned defects, or you were aware that historically 50 percent of our cases have some sort of defect that's discovered within the first five years? Some specific repairs had been made before the protests were filed. And you had actual knowledge of defects that were not yet repaired at the time as well, right? Actual knowledge of defects that were not repaired. I would say probably not. Those defects were discovered later. Well, Zionist—you're answering these questions— By the way, what are the defects? Can you tell us? Yes, although they're not in the record here. I know that. They're in the—  Yes. Because we don't have the records. recall repairs for faulty belts and mats and various emissions problems and other mechanical defects in the car. Well, let me see if I understand what you're telling us is that you had these cars were brought in. You knew there would be repair—probably some repair would be necessary in each one of these cars, but you couldn't say, in that car over there, we're going to have to do something with the brakes. Is that right? You couldn't tell specifically what a particular car would require. That is, if someone at the collector's office came to you and pointed out a particular, and said, in that brown car over there, what repairs are you going to have to make? You couldn't answer that. At the dock? No, we couldn't answer that at the dock. By the time you filed the letter. Some of them—well, by the time you filed these letters, we knew about all the defects. The letters in this case, we knew about all the defects. They had already been repaired. And why—is there a reason why you couldn't discover the defects at the time of the earlier liquidation? Yes, the defects are discovered when the customer brings the car in for repair to the dealer and tells the dealer what's wrong with it. And then the dealer takes a look. Was this over a period of several years, these defects? Yes, well, it's a warranty period. It's usually three years. What is the warranty period, 24 months or longer? Two to three years, depending on the particular car involved. So you want us to conclude that under the statute, an importer has the ability to come in and get an allowance for the appraised value of what he imported for the two- or three-year period. Absolutely. But now, just to make sure I understand, the cars at issue in this case were all repaired between 1995 and 2000, right? That's right. You filed your—you sent letters to Customs in 2006. That's right. There's a big gap here. There's a big gap, and there's a reason for it. Yeah, you were waiting for the proceedings to go forward that are actually the other case. We filed protests with the Customs Service within 90 days of liquidation, timely protests. But what were these protests? These protests were that they failed to give you an allowance for the repairs. That's right. They were the identical defects, identical protest language. But you couldn't—could you state in those protests the amount? Because if you tell me that you didn't know what the defects were in any particular car, but you did know that generally every car would probably have some defect, how could you possibly say we think we're entitled to have the allowance reduced by X dollars? Well, we had a good reason to believe there would be defects based on statistical information. I understand that, but you couldn't identify the amount by which you were seeking to have the duties reduced, could you? We could estimate the amount. At the time of the letters, you know precisely where they are. Exactly. Absolutely. So in other words, at the time of these letters to the penny, and you identified per car the exact defect. That's right. If I may, the reason— At the time of the letters, but not at the time of the 90 days. Correct. Well, now let's get into the law now that we've tinkered with the facts a lot. Okay. You've got a statute that says the praised value is going to be the customs value unless you protest within 90 days. That's the general rule. That is the rule. Well, it's not— How do you get around that? It's not always the rule. If you look especially— —valuations that you can in the letters six years later, but you're going to have to rely on this expectation that Judge Prost is talking about. To file the protest? Yes. You're going to have to say we can estimate that the approximate repair value is $2,000 per car. Yes. To file the protest, we have those figures. That's correct. But those are estimates. They're not— Those are estimates. And within the— In this case, because it's six years later, we could actually go car by car by car by car. That's right. To do that, we have to violate the general rule of 90 days. Well, I don't think the answer was violate the general rule because I don't think the general rule applies when what's at issue is the condition of the merchandise. The law is replete with exceptions and indicia that when we're talking about not the classification of the merchandise, which you're going to know at liquidation, not the statutory valuation basis, transaction value, transaction value. Actually, it's interesting that the regs are pretty clear that for fruit that might spoil or perishable goods, there are exceptions. There are. But it's interesting they don't have such an exception here. Well, you know what— Doesn't that militate against you? No. I think that no time limitation was intended. And if you look in Section 158— What gives us that intention? Well, I'm going to say—I'm going to first look—explain in context. Part 158 of the regulations, which contains this particular provision for an allowance for defects, has three subparts, A, B, and C. And I believe in the oral argument in Saab, I think it was Judge Shaw, raised the issue of whether you could simply file a claim. I was kind of surprised as to why you would file a protest to raise this claim. He raised 158.23, which is an application made on Customs Form 4315 for—essentially for an allowance due to a theft or a loss while goods are in Customs custody. That doesn't apply to our case. The customers already had the cars. But in this particular case, if you have a loss in Customs custody, you don't seek your allowance by filing a protest. You go into Section 158.21, and you file a refund within three years of the date of importation. Because that's what it explicitly says, but it doesn't say that—that none of that specificity is in the— That's right, and I think that's the reason why Customs and Congress left that open. Hey, I think the answer is commercial reality. If something is totally destroyed, you're going to see that at the dock. If the car is smashed up and just a hunk of rusted, smashed-up metal, you're going to see that that's a claim for a total destruction. Well, let me ask you about commercial reality to sort of go back a little to the practical stuff we were talking about beforehand. Under your system, let's assume that car companies decide for competitive reasons that they've got to start giving 10-year warranties rather than 2-year warranties or 5-year warranties. So let's accept that most car importers have 10-year warranties. I'm unclear how realistically your system would work. Are you saying that, okay, in year 4, 5 customers come in and get paid under warranty, so I write a letter to Customs and get my money for that. And in year 7, 15 others come in, and I write my letter to Customs doing that. And in year 9, another. I mean, I'm perplexed at how what Congress clearly, I think you would agree, under 1514 tried to create a realistic, practical, officious system works under your view of 15812. Am I wrong about how the facts would work under your interpretation? No, I think that might be a possibility. But I think the bedrock principle of valuation is you pay duty on the condition of goods as imported. Now, there's a second claim that wasn't in Saud, that wasn't in Samsung, that the court did not rule on. There's an exclusion for maintenance costs under the statute. Well, are you saying, it's not clear to me again, is it your position that for this type of claim, you don't have to file a protest? Or is it your position, yes, you have to file a protest, but the time on the protest doesn't run until you discover exactly what the defect in each car is? I think you don't have to file a protest against liquidation. I think when you discover a defect, you write a letter. Customs makes a decision on the letter. You have to file your protest against that decision. The statute seems to say that you do have to file a protest against liquidation. Is it your position that generally that's true, but you don't have to file a protest where what you're seeking is not a change in the value of the property, but basically a change to reflect some defect that you've discovered only after liquidation? Yeah, I don't think you have to file a protest for that. You don't have to ever file a protest? All you have to do is write a letter to Customs then six years out and say, give us this, or are you saying you can file a protest, as Judge Friedman said, but you can file it whenever you discover them at a later date? I never saw in the law a way to file a protest against liquidation beyond the statutory period, which is now 180 days. You can protest a decision of Customs. Suppose in response to your letters, instead of ignoring them, Customs has sent you back two letters and said we have your letters at such and such a date, we decline to make you any further payments, period. Would you have had to protest that? Absolutely. Pardon? Absolutely. Why? It's a decision of the Customs Service having to do with the merchandise. You have to protest that decision. That's what I wanted to do here until I found out from the government that they were just intending to ignore it. Futility. Let me ask you, why doesn't 158.12 provide some reappraisement procedure, give you a remedy, if the 15.14 doesn't apply? Well, it does say that there is to be an allowance given. And a lot of these other regulations, again in 158, Part 158, provide for allowances. But there's no real procedure to accommodate that outside of the 90-day protest period under 15.14, is there? Well, if you're talking about reliquidation, Your Honor, there are a lot of ways for reliquidation. Well, reappraisement, some kind of—what is your remedy is really what I'm asking outside the statutory. And the statute's just pretty flat out. It's unless you file the protest within 90 days, you lose. That's kind of what the statute says. That's what they're going to tell us in just a minute. I think that's very unfair, and I think it's commercially unrealistic to be able to discover details. But where does the reg give you another—a remedy? Yes, the remedy is you file a letter claim, just like for the other particular— Where do you find that in the regulation? The regulation doesn't tell you how to do it. It doesn't even say it has to be in writing. Old Section 1520 didn't say it had to be in writing either. How did you file a Section 1520 claim? You sent a letter. Well, but the statute clearly says—I mean, what Judge Rader seemed to be talking about, and you seemed to respond, is what you're really talking about is a reliquidation. And when Congress decided you ought to have a reliquidation, they spelled it out quite clearly in 1520C. And they also limited it. I mean, how can we read 158.12 the way you want us? Then why would Congress have said that you could only reliquidate under the three limited categories? You're essentially asking for a reliquidation on anything. Well, I don't think you need a reliquidation to issue the refund. But if you do, if you win a case in the Court of Appeals or in the Court of International Trade— But isn't reliquidation pretty much limited to a change in liquidation amount to clerical errors? No. If you win a court case and customs is wrong and you're entitled to a refund, the entries are reliquidated pursuant to the judge's decision. It doesn't say that in the statute, but it is because that's the answer. Well, no. The reliquidation statute says a clerical error, a mistake of fact, and inadvertence. I don't know— But I'm talking about if you try a case in the Court of International Trade, and you win, and this court pulls it on appeal, and you're entitled to a refund. How do you get the refund? No, but my question— The entries are reliquidated. That's embodied in the judgment, isn't it, the refund? It is. That's because you've got a judgment of the Court of International Trade saying you're entitled to recover X dollars. But it is a reliquidation. It is a reliquidation. Not an irresponsible one. Go ahead. If I might point out Regulation Section 159.6. Let's see. It's subpart B.1. It says reliquidation at importer's request. When reliquidation of any entry is made at the importer's request, such as reliquidation following the allowance of a protest, and then it goes on to also list another example under Section 1520. It says any refund determined to be due shall be refunded. So Customs just reliquidates and sends you the check. It seems—I mean— All right, Mr. Kovarsik, I think we've— I'm sorry. I see I've— Oh, no, no, no. We gave you that extra time. What we're going to do here is we're going to give you your three minutes of rebuttal back. And if you'd give Ms. Williams— Oh, yes, please. Eight minutes beyond her 15, so she'll have 23 minutes if she needs to use all of that. And that'll keep our time even. All right? Yes, thank you. If you need it, you have that time. Thank you very much. Ms. Williams. Mr. Kovarsik, with your extra time, could you tell me at the outset, what does the government say they should have done in this case to get this money back that they didn't do? What they should have done is examined their cars upon entry because—or within the time to protest. And there's no evidence they didn't nor couldn't have done that. Well, didn't they file some sort of a protest when—in the earlier stage, which the district judge, the Court of International Trade said, that's no good because you have—you didn't know about it at the time you imported the goods. They did file that. Now, what in addition to that should they have done? That brings up exactly what I'm saying. You're ignoring your own regulation. You give an allowance made in the value to the extent of any damage. You wouldn't even need that provision if your only remedy is to appraise in advance, discern any damage, and include it up front as the actual value of the material. You wouldn't need any allowance. But you give an allowance, you just don't give them any way to get the allowance. No, that's inaccurate. Well, tell me why it's inaccurate. The regulation— These allowances aren't going to come up until the defects discovered a year out or two years out. That's the— So the 90 days are long past. There's no chance. The allowance says quite clearly that you could get an allowance. You can get a reduction in the appraised value of your good. That's what the allowance tells us. If you have defective goods. To the extent of the damage. That's question one, is can you get an allowance of this nature? Clearly, the regulation says yes. Part two is— But how do you do it? How do you do it? Part two, we have to look to 1514, which says you can get an allowance if you discover it before liquidation or if you discover it after liquidation. Within 90 days. Yes. But that's not— But suppose you don't discover it within 90 days. Suppose you discover it within 120 days. Can you get an allowance? That's not an allowance. That's the value of the merchandise when you bring it in. Congress has said with 1514 there is a line. The same way if you discover your goods are misclassified, that they're not a cargo— 120 days later, they discover there's substantial repairs to be made. How do they get a refund covering the cost of the repairs on that one car? They have to, in order to bring that claim for an allowance, you have to bring it within, which is now 180 days, but it was more than— I'm going to change my hypothetical. They don't discover it within 180 days. They discover it after 200 days, past the 180-day period for bringing it. What can they do? Nothing? Nothing. I want to make sure we're on the same page. Well, then you don't give an allowance, do you? You really have to—they have to know the value, including defects, at the time it comes in. There really is an allowance for latent defects. No, that is incorrect. They have to know it within the time to protest a liquidation. Well, but, see, you do have procedures that allow this for perishables. If my banana's spoiled— Exactly. You have to— Why don't you recognize the same allowance for an automobile? Perishables is a shorter amount of time, not an extended amount of time. The regulation says— The theory—the time is somewhat irrelevant. No, that is— The theory is that the value of the goods should account for latent defects. They both do, but this is very, very important. With perishable goods, Customs is saying, you have to find that problem within a couple of days of entry. With the regulation we have here, it's not within a couple of days of entry. It's within months of liquidation. In other words, which is many, many, many months later. The provisions that deal with perishables— So whether or not you can get a refund in effect of the cost of making repairs turns on the coincidence of how many days after liquidation you discover the need to make repairs. And that is true in every aspect. Is that correct? It's true in every aspect of Customs litigation. If you're right, why don't you have some notation in 158.12 that says, subject, of course, to 1514? Because you need not—because it's a regulation. 1514 is a statute. This is a regulation. Clearly, clearly. Customs cannot expand the statute. And the plaintiff's saying that—excuse me, Volkswagen is arguing that notwithstanding you have a statute which gives you a cutoff date. Congress has told you a cutoff date. That Customs can say, well, it doesn't really apply here. We're just going to expand— So you've given them an allowance without any way to obtain it for latent defects. Absolutely incorrect. Unless it's one of those latent defects that comes within a few days. Not within a few days. A latent defect within a few days is okay. It could be years. Wait, how can it be years? Because what seems to be the confusion here is liquidation does not occur within a few days of entry. Liquidation can occur a year or more after entry. And latent defects can happen a year and a half or more. But Congress in 1514 said, as it does in many aspects of Customs litigation, you can't bring any claim you want at any time. The same way you can't challenge—I'm sorry. I take it what your opponent basically is saying is, sure, Congress has said in the general run of cases you have to bring your claim within a certain period, but there's an exception. That general principle doesn't apply where what you have is a latent defect that doesn't appear until after the period has expired and the importer had no way of knowing of the existence of this defect until it was first claimed. That's what he's saying. Right. Unfortunately, the regulation doesn't say that. The regulation just says you can get an allowance in the appraised value, and when you look at the statute, it tells you appraised value occurs in liquidation. But you can get an allowance, but you can't collect it? You can collect it if you discover the defect in time, and that can be years later. Who controls the timing of liquidation? I mean, you said the liquidation may be a year or two later. Who controls that timing? Not the importer, right? The importer can because they could ask for an extension, but liquidation by statute has to occur within 300 and some odd days of entry. If it's not suspended, not extended, so customs can do it, but it's customs... Let me ask you, just step back a minute. Your answer to Judge Friedman is yes, and your answer to counsel is life isn't fair. Let's assume there are certain kinds of latent defects, like an automobile where a defect arises once you run it more than 10,000 miles, so that chances are, virtually certain, that you're not going to be able to discover that latent defect in time to file a protest. Your answer to that is your answer, life just isn't fair, and that Congress in 1514 said this is only this? Congress said in 1514 there has to be an end because you reliquidate entries endlessly. But you say in your own brief, you say in most cases, so I guess I was interested in what the other cases are. You say in most cases you do 1514, it's final. What I meant was if you look at 1514, the first sentence says except as provided in subsection B of the section, it gives you very specific exceptions to 1514. What I was referring to is that language. That's the only exception to 1514. Except you also say in your brief, granted in another section when you're talking about the jurisdictional question, you also make a point that there's no evidence they were unable to discover the damage in time to file a protest, and there's no evidence they could have learned that. Well, under your scenario, why would that make a difference? I mean, here I think he probably could have provided, assume he had provided conclusive evidence that there's no way he could have discovered this in time to file a protest under liquidation. Is that enough? No, it's not enough. But the problem is here the plaintiff is saying not only is it always enough, I don't even have to bother demonstrating to the court that here I couldn't have found it. There were two problems before. Yeah, but what's the government's position? Are you saying that that would make a difference? I mean, I don't understand why you're arguing that he didn't even do it, but you're saying even if he had, it wouldn't have mattered. Exactly, that's exactly what we're saying. It's trying to get the big picture here, which is Congress said there has to be an end. But even if, let's say you buy Volkswagen's argument, well, there's some kind of exception here if you can't tell that a defect occurred. There's not one stitch of evidence here that we couldn't tell. Ms. Williams, let me ask you what I'm going to start with. This is an absurd hypothetical, but I want to find out what your answer to it. Suppose someone imports a large quantity of purchases abroad and imports a large quantity of sulfur. And there's every reason to believe it's sulfur and it's duty-able at sulfur. And then it sits for two years in their warehouses and they do nothing about it, and it's been liquidated in the interval, and more than 180 days after liquidation they decide it's time to sell it. So they said, let's just check it and be sure it's still okay. And they open it up and they discover it isn't sulfur at all, it's salt. And salt is worth, I assume, a lot less than sulfur. Is there any... what... Can they get back the difference between the duty on salt and sulfur in that hypothetical, or are they stuck? They're stuck. Why? Because Congress said in 1514 the only way you could challenge the classification, the appraised value, the liquidation of a good... Well, what should they have done? They should have, when they got all these containers of sulfur in, they should have opened every one and checked to be sure it was sulfur and not salt or something else? If they want to ensure that they pay the least amount of duties they have to, yes. Why doesn't Judge Friedman's hypothetical come under 1520C, assuming it meets that time frame? Isn't that a mistake of fact? They could make that argument. It depends on what happened. I mean, yes, you could make that argument, and in this case, similarly, the plaintiff arguably could have made this a 1520C case. That's what I was going to ask you. He could have arguably said that there was a mistake of fact because we assumed all of these cars are going to run fine past 10,000 miles, and that was a mistake of fact that they didn't. I would think he could. Of course, there is time limits. 1520C doesn't exist like that anymore, but back then there were time limits. To be fair, there's limitations with that. I think it has to be within a year. One year after liquidation. I'm sorry? Yes. One year after liquidation. So he's limited, but the problem here is Congress said liquidations are final. This process has to end. You cannot keep challenging it. Our court said in Saab that you can obtain an allowance quote, at any time, close quote. Does that control here? No, because the finding in that had to do with a completely different issue, and to take that, completely take that out of context, the court would be a complete misunderstanding of what this court said in Saab. It said you can request at any time. You think we made a mistake? No, absolutely not. What the court was saying, if you read that decision, is Customs' argument in that case was you have to discover the damage upon importation. Yes, and we said no, you can discover it at any time, and we went on to say, and you can make a claim at any time. Right, but the court- The make a claim at any time was a bridge too far. You can make a claim. The question is, can you? The claim exists. The question is now, part B, can you make that claim through a protest? The court did not discuss that, well, you can make it outside the scope of a protest, that you can write a letter years later when you get around to discovering it. It never looked at that issue. The court was focusing there on when do you have to discover in order to trigger 158.12. But that still avoids the second half. Once you know you can get an allowance, how do you get it? And in this case, 1514 is black and white. There is a limit. Well, let me ask, I know there must be a reason why the government hasn't argued this, so I just want to know what it is. Deference, that there should be deference paid to the government's interpretation of its own regulation. Because the reason is the government's position is not written anywhere. And then we considered it, but our position is reflected in our briefs. And so that's why. But yes, we feel that. It isn't a longstanding administrative interpretation. This is the first time you've thought about it too, right? I have no idea. I really can't answer that. I don't want to mislead anybody. I don't know. Personally, I don't know. It's the first time I've ever come across this issue. There's a reason it wasn't written. Nobody had thought about it until this hit. I don't know. I really don't know. Well, as I understand, I want to be sure I understand your position. It is that what they should have done is they, earlier than they did, they They should have filed a protest. Can I just address one thing, and then I'll get to that? Let me tell you what I'm coming to, which is if, in fact, it's clear that the protest wouldn't have done any good because they said, OK, you get an allowance, but of course you can't collect it, wouldn't that run afoul of the rule that you don't have to exhaust administrative remedies when it would be futile to do so? No. No, it would not. Why not? Because 1514 tells you that you can only file a protest up to this date. It's the same way with your classification analogy. Something is not futile because you blow the deadline. And that's what we have here. You can't use this cause of action, nor I, to get around the fact you've missed all of your deadlines. That doesn't make the administrative process ineffective or futile. It just means you didn't act timely. And the problem here is the plaintiff didn't act timely, has no proof that it couldn't have acted timely. But even if it couldn't have, Congress has said there's an end to this. Why do you keep saying that? According to the government's position, it doesn't make any difference what he could have done. Yes. It was just blow. Right. There is absolutely, yes, our position is. No matter what he did, no matter what he said, no matter what, if you can't discover a defect in time, if it's a latent defect, your view is that you're just out of luck. It's the same way if you don't discover the classification error in time. It's the same way because 1514 is black and white. If you can only challenge classification appraisement or liquidation within this amount of time. It's the way it is. So even if, going back to the sulfur analysis, that equally, you're out of luck. That's just the way that the law is written. If there's a problem or it's unfair, as Volkswagen said, the recourse is to go to Congress. Judge Bader, I kind of misstated something in hindsight. I believe that customs' position has always been that 158.12 was governed by 115.14. I don't want to suggest that this is a new idea. Do you think the government has the authority to promulgate a regulation that could account for latent defects in automobiles, boats, any large consumer product that is subject to latent defects years after? I doubt it because I think of the way 1514 is written. If it doesn't fall within the prefatory exceptions, I don't think customs can expand the scope of that provision. You keep telling us, every time we ask a question, it seems to me you keep coming back to saying, well, 1514 says you have to file, da-da-da-da-da. Is there anything in either the language or the legislative history of 1514 that shows in an act of this, Congress intended to reach this situation of latent defects that are not discovered until long after liquidation? I suspect not. No, but what we do have is the Statement of Administrative Action, which is mentioned in all of the briefs. I'm aware of that, but I just wanted to... There's nothing to show in the statute that Congress was saying, in effect, you've got to file within a certain period after the protest, and that includes cases where there's a latent defect that you haven't discovered until after the period is expired. I think you have to assume they intended it because the word appraisal explicitly exists in 1514, which tells you Congress is thinking about how you appraise something. So I think you have to assume that, by using that, they were considering all things that can affect the appraisal of a good. Any other questions? Thank you very much. Okay, thank you, Ms. Williams. Mr. Kovarsik, you have your three minutes of rebuttal. Yes, thank you, Your Honor. There has to be a way for Volkswagen to make this claim. We filed a protest and said the merchandise has latent defects. It was within the 90 days. It was usually on day 89. There's no defect in your original protest. It's just that the court said, Okay, that's what the court said. The fact is, there are defects. That's why we have this case. Let me ask you, you say there has to be a way. Is that there has to be a way because we have 158.12? In other words, if 158.12 didn't exist, would you have a basis for arguing that there still ought to be a way to get around 1514 and the limitations? Yes, I think it's a basic bedrock principle of customs law that merchandise must be appraised in its condition as imported. You can't assign the same value to a smashed car than you can to one that's perfect. It's unfair. So you would read into the term value the concept of minus latent defects. I'm not sure you understand that. You would read into the appraisal of value in the statute the concept that its real value does not include latent defects. It's assumed to be valued in its condition as imported. Could customs have stated in the regulation after what it said provided, however, that no allowance shall be made for defects discovered after the period for challenge and the liquidation has expired? Could customs set a time limit just like it did in the Harbormint case? Yes, absolutely. They're free to do it now. What they've known about this is that it's been 35 years and they've decided not to. Mr. Kovarcik, there's a problem that I think all of us have with your proposal, and that is it's so open-ended. You can just go forever and be discovering things five and ten years away. How would you reflect a need for finality and to have some kind of real purpose in the liquidation process? Revise that regulation and put in a time limit to 15-14. What about 15-14? It's pretty... But I think 15-14, given the context, does not address condition of the merchandise. We have a completely different statute for drawback when there's defective merchandise. We have all these other provisions in 158 about defective merchandise. None of them follow the protest procedure. Well, wouldn't it really the fairest thing to be, and maybe there's nothing you can do about it, to say that in this particular situation that you have, the time within which to challenge doesn't begin to run until the importer has discovered that it's going to have to make repairs on a particular item and how much it's going to cost to do that. Well, I suppose Customs or Congress could make that sort of regulation. I mean, in light of Judge Rader's question, otherwise the thing can go on and on and on. Now, we're talking about automobiles, but suppose you were importing perhaps electric generators which may last for 20 years, and after 14 years, suddenly they come in and say, oh, we've had to make some repairs. We discovered when we imported this 15 years ago. Please respond to this question, and that will be the end of your argument. But in our particular case, it's limited to 3 years because that's the warranty period. Thank you, Mr. DeBorsa. All rise.